No. 2--06--0798      Filed: 2-6-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--CF--2090 |
| | ) ) | Honorable |
| JESSIE J. TAYLOR, | ) ) | Patricia Piper Golden and Timothy Q. Sheldon, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE BURKE delivered the opinion of the court:

A police officer stopped defendant, Jessie J. Taylor, for violating two traffic offenses: operating his bicycle without a headlamp and riding it on the sidewalk. Defendant could not post a $75 bond and did not have a valid driver's license, and the officer took him into custody at the scene. After defendant was placed in custody, the officer searched defendant incident to the arrest and found a crack pipe. A later search at the police station revealed a bag of cocaine in defendant's sock. Defendant filed a motion to quash his arrest and suppress evidence, which was denied. Following a jury trial, defendant was convicted of unlawful of possession of less than 15 grams of cocaine (720 ILCS 570/402(c) (West 2004)) and unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2004)). Defendant was sentenced to a 2-year prison term for the unlawful possession conviction and a 180-day jail term for the drug paraphernalia conviction. On appeal, defendant argues that the trial court erred in denying his motion to quash his arrest and suppress evidence. He

first contends that the evidence recovered by the police was procured in violation of the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6). Specifically, defendant contends that, although the police may have had reasonable suspicion to stop him for the alleged traffic ordinance violations, the police had no authority to arrest and search him, because they lacked probable cause that he committed an offense more substantial than the alleged petty offenses. Also, defendant contends that he should not have been placed under arrest and searched until the police actually issued a citation for the alleged offenses, as required by Supreme Court Rules 526(a) and 552 (210 Ill. 2d Rs. 526(a), 552). We affirm the trial court.

FACTS

On January 12, 2006, defendant filed a motion to quash his arrest and suppress evidence. In his motion, defendant argued that he was arrested by the Aurora police department on September 10, 2005, for riding on the sidewalk a bicycle with no headlamp. Defendant argued that, at the time the police stopped him, he was not riding his bicycle, but instead was pushing the bicycle. Defendant argued that, after he was unable to post bond on the alleged bicycle violations, he was taken into custody and searched incident to the arrest. As a result of this search, the police recovered a metal pipe and a plastic bag containing cocaine. Defendant argued that the evidence was obtained in violation of the fourth amendment, as the arresting officer did not have an arrest warrant or observe defendant commit any offenses. Defendant further argued that the arresting officer lacked a reasonable belief that defendant was committing, was about to commit, or had committed an offense. Defendant requested the trial court to quash his arrest and to suppress the physical evidence obtained during the search.

On February 15, 2006, the trial court conducted an evidentiary hearing on defendant's motion. At the hearing, defendant testified that, on September 10, 2005, at approximately 2:30 a.m., he was walking his bicycle on the sidewalk near the corner of Loucks Street and Grand Avenue in Aurora. Defendant's bicycle was not equipped with a headlamp. Defendant was walking toward his aunt's house and he was speaking to Joseph Gray. Defendant then saw a police vehicle approach, and the vehicle's spotlight focused on Gray. A police officer first asked to search Gray and then asked to search defendant's backpack. Defendant testified that he consented to the search because he did not believe that he could refuse.

Defendant further testified that, upon finding a compact disc player, some compact discs, some clothes, and a few tools in his backpack, the officer requested permission to search his person. Defendant testified that he again consented because he thought that he had no choice. During the search, the officer recovered a metal tire gauge from defendant's pocket. Defendant testified that, at this time, the officer arrested him and placed him in handcuffs. Defendant testified that he never received a traffic citation. Defendant testified that, at the time of his arrest, the officer never mentioned defendant's bicycle or headlamp. Instead, the officer mentioned a pipe that he found in defendant's pocket. The officer then asked him whether he could post bond for the drug paraphernalia offense, and defendant stated that he had no money.

Following his arrest, defendant was transported to the police station. Defendant testified that he was searched at the station prior to booking and that the police recovered a plastic bag from his sock.

Aurora police officer Thompson testified that, on September 10, 2005, at 2:20 a.m., he was on patrol when he observed defendant slowly riding a bicycle on a sidewalk, with a man who was walking beside him. The area was well lit. Thompson approached defendant and, when he was

approximately 50 feet away, defendant got off his bicycle. Thompson asked defendant what he was doing in the area, given the drug activity and crimes associated with the neighborhood. Thompson told defendant that he had violated two municipal traffic ordinances: riding his bicycle on the sidewalk and operating his bicycle without a headlamp. Thompson asked defendant whether he could post a driver's license or $75 bond on the violations, and defendant replied that he could not. Thompson testified that, because defendant could not post bond, he arrested him.

After arresting him, Thompson searched defendant. Thompson testified that he considered the search to be incident to defendant's arrest, and he did not ask for defendant's consent. During the search, Thompson recovered from defendant's pants pocket a metal smoking pipe "common with crack cocaine usage." Thompson then transported defendant to the police station. There, he was booked by Officer Dean Pederson, who located in defendant's sock a bag containing a powdery substance.

On cross-examination, Thompson testified that operating a bicycle on a sidewalk and without a headlamp were considered petty offenses. Thompson testified that he never presented defendant with citations for these offenses because he had not completed the paperwork at the time defendant was transported to the police station. After defendant was found in possession of cocaine and drug paraphernalia, Thompson did not pursue the bicycle offenses, and no citations for those offenses were ever issued. Thompson testified that he searched defendant to "locate any drugs, contraband, weapons on the person being arrested for safety." Thompson further testified that it was his practice to arrest those persons who could not post bond, even in cases of petty offenses.

Pederson testified that he was responsible for booking prisoners on the date of defendant's arrest. While searching defendant upon his arrival at the police station, Pederson asked defendant to remove his socks. When defendant removed his right sock, a bag fell to the floor. The substance

contained in the bag tested positive for the presence of cocaine.

During argument on the motion, defense counsel argued, inter alia, that, even if Thompson had a lawful basis to initially stop defendant, the subsequent custodial arrest and search violated the fourth amendment. Counsel argued that defendant could not have been validly arrested on the bicycle offenses, as Thompson failed to issue defendant any traffic citations on those offenses. Counsel argued, "he was arrested for no headlamp and riding the bike, but he did not get any citations or complaint, and we don't have companion cases of traffic violations. So if he was arrested for that reason, a valid reason, then why *** don't [you] have [any] traffic citations[?]"

Following argument, the trial court denied defendant's motion to quash his arrest and suppress evidence. The trial court found Thompson's testimony credible and concluded that he had a proper basis to stop defendant. The trial court further found that Thompson had the right to arrest and search defendant after he could not post bond on the bicycle offenses. The trial court stated that "the law is clear that the [officer] doesn't have to write the underlying ticket" and that his failure to do so did not affect the reasonableness of the search.

The case proceeded to a jury trial, and defendant was convicted of unlawful possession of less than 15 grams of cocaine and unlawful possession of drug paraphernalia. The trial court sentenced defendant to 2 years' imprisonment on the controlled substance conviction and a 180-day jail term on the drug paraphernalia charge. This timely appeal followed.

ANALYSIS

Defendant's sole contention on appeal is that the trial court erred in denying his motion to quash his arrest and suppress evidence. In support of his contention, defendant argues that the cocaine and drug paraphernalia recovered by the police were obtained in violation of the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the

Illinois Constitution (Ill. Const. 1970, art. I, §6). Although defendant acknowledges that the police may have had reasonable suspicion to stop him because of his purported violation of two municipal traffic ordinances, he asserts that the police had no authority to arrest and search him because they lacked probable cause that he committed an offense more substantial than a traffic violation. Additionally, defendant maintains that his arrest and the search incident to his arrest were invalid because Thompson never issued a traffic citation to him as required by Supreme Court Rules 526(a) and 552 (210 Ill. 2d Rs. 526(a), 552). Defendant argues that, because Thompson failed to comply with the supreme court rules governing arrests, he was not authorized to arrest defendant based upon "defendant's inability to post bond on a non-existent 'Citation and Complaint.' "

When reviewing a ruling on a motion to quash an arrest and suppress evidence, we apply a dual standard of review. People v. Davis, 352 Ill. App. 3d 576, 579 (2004). We accord great deference to the trial court's factual findings and reverse those conclusions only if they are against the manifest weight of the evidence. People v. Gherna, 203 Ill. 2d 165, 175 (2003). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. Davis, 352 Ill. App. 3d at 579. After reviewing the trial court's factual findings, we review de novo the trial court's ultimate legal ruling. People v. Sorenson, 196 Ill. 2d 425, 431 (2001).

We begin with the trial court's factual findings. The court found credible Thompson's testimony that, at the time of the stop, defendant was riding his bicycle on a sidewalk and without a headlamp. In so finding, the court rejected defendant's testimony that he was walking, rather than riding, his bicycle on the sidewalk. Because the trial court was in the best position to observe the witnesses' demeanor, resolve conflicting testimony, and weigh credibility, we must defer to its conclusions. See People v. Sims, 358 Ill. App. 3d 627, 634 (2005). On appeal, defendant challenges neither the trial court's factual findings nor its credibility determinations. After reviewing the record,

we do not find that the trial court's factual findings were against the manifest weight of the evidence. Therefore, we review de novo the trial court's ultimate legal ruling on defendant's motion, according to Thompson's testimony of the facts of the stop and arrest.

Both the United States and Illinois Constitutions protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6. An arrest without probable cause or a warrant based thereon violates these constitutional provisions. People v. Lee, 214 Ill. 2d 476, 484 (2005). Accordingly, the Code of Criminal Procedure of 1963 allows a warrantless arrest only when a police officer "has reasonable grounds to believe that the person is committing or has committed an offense." 725 ILCS 5/107--2(1)(c) (West 2004). The statutory phrase "reasonable grounds" has the same substantive meaning as "probable cause." Lee, 214 Ill. 2d at 484.

Thompson observed defendant violate two Aurora municipal ordinances regarding bicycle use, which provided a valid basis to stop defendant. See Sorenson, 196 Ill. 2d at 433; Davis, 352 Ill. App. 3d at 580. Defendant does not challenge the initial stop. He contests the legality of the search that took place after Thompson placed him under custodial arrest. Defendant argues that the arrest and search were invalid because Thompson lacked probable cause to believe that defendant had committed anything more substantial than a traffic violation. Furthermore, defendant asserts that his arrest was unlawful because Thompson failed to provide him with a traffic citation as required by Rules 526(a) and 552.

We reject defendant's first argument that the arrest and search were a violation of his constitutional rights because he committed only minor traffic violations. In Atwater v. City of Lago Vista, 532 U.S. 318, 149 L. Ed. 2d 549, 121 S. Ct. 1536 (2001), the United States Supreme Court held that the fourth amendment does not prohibit a warrantless arrest for minor traffic violations that

are punishable only by a fine. In Atwater, the defendant was stopped for failing to wear a seat belt and failing to secure her small children, offenses that carried fines between $25 and $50. When the defendant was unable to produce her driver's license, the officer placed her under custodial arrest and took her to the police station. Atwater, 532 U.S. at 323-24, 149 L. Ed. 2d at 558-59, 121 S. Ct. at 1541-42. The Supreme Court held that the police could lawfully arrest the defendant even though Texas law provided the police the discretion to issue citations in lieu of an arrest, stating, "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater, 532 U.S. at 354, 149 L. Ed. 2d at 577, 121 S. Ct. at 1557. Additionally, the Supreme Court held that the performance of a search incident to such an arrest does not violate fourth amendment protections. Atwater, 532 U.S. at 354-55, 149 L. Ed. 2d at 577, 121 S. Ct. at 1657-58.

More recently, in Virginia v. Moore, 553 U.S. ___, 170 L. Ed. 2d 559, 128 S. Ct. 1598 (2008), the Supreme Court held that police officers lawfully arrested the defendant for a traffic violation even though the arrest violated a Virginia statute. In that case, the defendant was driving a vehicle while his driver's license was suspended. The police stopped the defendant and placed him under arrest. A search of his person revealed 16 grams of crack cocaine. Virginia's statute describing the offense of driving while a license is suspended provides that a driver is to be issued a summons rather than be arrested. The Supreme Court held that the police officers' violation of state law in making the arrest did not affect its reasonableness for fourth amendment purposes. The court stated that " 'whether or not a search is reasonable within the meaning of the Fourth Amendment' *** has never 'depend[ed] on the law of the particular State in which the search occurs.' " Moore, 553 U.S. at ___, 170 L. Ed. 2d at 568, 128 S. Ct. at 1604, quoting California v. Greenwood, 486 U.S. 35, 43, 100 L. Ed. 2d 30, 39, 108 S. Ct. 1625, 1630 (1988). The Court reiterated that, while individual

states may construe their own constitutions as imposing more stringent constraints on police conduct than does the federal constitution, state law did not alter the content of the fourth amendment. Moore, 553 U.S. at ___, 170 L. Ed. 2d at 568, 128 S. Ct. at 1604.

In People v. Caballes, 221 Ill. 2d 282 (2006), the most recent Illinois Supreme Court decision addressing the scope of article I, section 6, of the Illinois Constitution, our supreme court stated that Illinois's search and seizure jurisprudence was in lockstep with the rulings of the United States Supreme Court. Caballes, 221 Ill. 2d at 314. The Caballes court reviewed the limitations to the lockstep principle based on differences between the Illinois Constitution and the United States Constitution. Caballes, 221 Ill. 2d at 304-14. The supreme court stated that it was not persuaded to construe the search and seizure clause of our constitution any more broadly than the search and seizure clause of the fourth amendment. Caballes, 221 Ill. 2d at 314; People v. Mitchell, 165 Ill. 2d 211, 217-22 (1995) (the search and seizure provision of our state constitution was not intended to be broader than the search and seizure provision of the fourth amendment). Accordingly, in view of Caballes, we are bound not only to follow Atwater but Moore as well. Other Illinois courts that have considered this question have also followed Atwater (see, e.g., People v. Bridgewater, 375 Ill. App. 3d 414, 419-20 (2007); Ross v. Mauro Chevrolet, 369 Ill. App. 3d 794, 799 (2006); People v. Thomas, 326 Ill. App. 3d 479, 484-86 (2001); People v. Bartelt, 384 Ill. App. 3d 1028 (2008)). We therefore conclude that defendant's custodial arrest and subsequent search violated neither the United States Constitution nor the Illinois Constitution.

Relying on this court's decision in People v. Moorman, 369 Ill. App. 3d 187 (2006), defendant suggests that the Illinois Constitution should be interpreted as providing broader protections than those afforded by the fourth amendment, as articulated in Atwater. In Moorman, this court declined to apply Atwater in view of language contained in the more recent Illinois Supreme Court cases of

People v. Jones, 215 Ill. 2d 261 (2005), and People v. Cox, 202 Ill. 2d 462 (2002).  The dissent in Moorman found the majority's reliance on Cox and Jones disingenuous, as it could not "seriously contend that in those cases our supreme court somehow determined that Atwater is not the law in this state."  Moorman, 369 Ill. App. 3d at 208 (Callum, J., dissenting).  We disagreed, stating that we did contend "precisely" that the holdings in Cox and Jones were inconsistent with the central holding of Atwater.  After serious consideration, we now question our decision to disregard Atwater in light of Jones and Cox.

First, we presumed in Moorman that, because the dissent in Cox pointed out that the majority never explained how its decision was consistent with Atwater, it was doubtful that the Cox majority was unaware of Atwater when it was decided.  Moorman, 369 Ill. App. 3d at 197.  The mere lack of an explanation in Cox as to how its decision was consistent with Atwater does not lead to the conclusion that the supreme court found that it was not the law in this state.  Additionally, we assume here that Jones never mentioned Atwater because the court applied an analysis of the plain-view doctrine, not because the court found Atwater inconsistent or rejected it as the law in this state.  Jones, 215 Ill. 2d at 271-72.  Thus, our contention in Moorman that Cox and Jones are inconsistent with Atwater must be rejected, as we misperceived the effect of Cox and Jones omitting discussion of Atwater.

Second, in Moorman, this court's refusal to apply the holding in Atwater because it would "contradict" the holdings in Jones and Cox failed to distinguish between a traffic stop and a full custodial arrest.  In Moorman, we focused on the following language from Jones:

" 'At this point, without more, Gebke lacked the authority to search defendant.  Stopping an automobile for a minor traffic violation does not, by itself, justify a search of the detainee's person or vehicle.  The officer must reasonably believe that he or she is confronting a situation

more serious than a routine traffic violation.' " (Emphasis added.) Moorman, 369 Ill. App. 3d at 198, quoting Jones, 215 Ill. 2d at 271.

We inaccurately expanded this holding by leaping to the conclusion that, since the officer in Jones lacked the authority to conduct a search, it necessarily meant that he also lacked the authority to arrest the defendant. Moorman, 369 Ill. App. 3d at 198. However, since the officer in Jones did not initially arrest the defendant for the traffic violation, the issue of a lawful search incident to custodial arrest never arose.

In Moore, the Supreme Court clarified the difference between a traditional traffic stop and a custodial arrest with the following statement:

"Officers issuing citations do not face the same danger, and we therefore held in Knowles v. Iowa, 525 U.S. 113[, 142, L. Ed. 2d 492, 199 S. Ct. 484] (1998), that they do not have the same authority to search. We cannot agree with the Virginia Supreme Court that Knowles controls here. The state officers arrested Moore, and therefore faced the risks that are 'an adequate basis for treating all custodial arrests alike for purposes of search justification.' " (Emphasis in original.) Moore, 553 U.S. at ___, 170 L. Ed. 2d at 571, 128 S. Ct. at 1608.

Accordingly, the very rationale underpinning our decision in Moorman to rely on Jones and Cox is also flawed.

Third, and most importantly, we refused to acknowledge that, per the lockstep doctrine, the Illinois Constitution offers no greater protection against searches and seizures than does the fourth amendment. See Moorman, 369 Ill. App. 3d at 208 (Callum, J., dissenting). In Atwater, the Supreme Court addressed the constitutionality of an arrest for a minor crime and held that, if an officer has probable cause to believe that an individual has committed even a minor criminal offense in his presence, he may, without violating the fourth amendment, arrest the offender. Atwater, 532

U.S. at 352-53, 149 L. Ed. 2d at 576, 121 S. Ct. At 1556-57. As we stated, our state constitution is in lockstep with the fourth amendment. Caballes, 221 Ill. 2d at 316. If the supreme court had meant to break loose from lockstep in Jones and Cox, the court would have said so. In sum, we find Moorman defective in that it improperly relied on Cox and Jones and failed to pay heed to the lockstep doctrine.

Besides Atwater and Moore, in Illinois, police officers have additional authority to place a defendant under custodial arrest for committing a traffic infraction that is punishable only by a fine. Such authority is codified in both the Code of Criminal Procedure and the Illinois Vehicle Code. See 725 ILCS 5/107--2(1)(c) (West 2004) (providing that a police officer may arrest someone when "[h]e has reasonable grounds to believe that the person is committing or has committed an offense"); 625 ILCS 5/16--102(a) (West 2004) (providing that "[t]he State Police shall patrol the public highways and make arrests for violation of the provisions of this Act"). Moreover, upon a lawful arrest, a police officer may reasonably search the person arrested, for the purpose of protecting the officer from attack. 725 ILCS 5/108--1(1)(a) (West 2004). In view of this authority, defendant's violation of the two municipal traffic ordinances provided a lawful basis for Thompson to place defendant under custodial arrest and to search incident to that arrest; the fourth amendment does not require a showing that Thompson possessed probable cause that defendant had committed an offense more serious than a traffic violation.

During oral argument, defendant acknowledged that Moore was essentially on point but contended that it did not apply in this case because Rules 526(a) and 552 require that an arresting officer issue a citation before conducting a search. The rules governing traffic cases, including rules regarding the charging and posting of bail, provide police officers alternative procedures to placing an offender under custodial arrest and having the offender appear before a court to obtain bail, as

required by the Code of Criminal Procedure.  See 210 Ill. 2d Rs. 526(a), 552; 166 Ill. 2d R. 553.

Under this scheme, upon arresting an offender for a violation of a traffic offense, the officer may issue

a citation on a standard form called a "uniform citation and complaint [citation]" pursuant to Rule 552

(210 Ill. 2d R. 552) and section 111--3 of the Code of Criminal Procedure (725 ILCS 5/111--3 (West

2004)).  See People ex rel. Ryan v. Hanover Park, 311 Ill. App. 3d 515, 519-20 (1999).  Rule 552

directs the arresting officer to complete the citation and, within 48 hours of the arrest, transmit it to

the circuit court clerk of the county in which the violation occurred.  At that point, the citation serves

as the complaint against the offender.  210 Ill. 2d R. 552; see 725 ILCS 5/111--3 (West 2004);

Hanover Park, 311 Ill. App. 3d at 520.

In regard to bail, Rule 526(a) provides as follows:

"Unless released on a written promise to comply[,] *** a person arrested for a traffic

offense and personally served by the arresting officer with a Citation and Complaint shall post

bail in the amount of $75 in one of the following ways: (1) by depositing, in lieu of such

amount, his current Illinois driver's license; or (2) by depositing, in lieu of such amount, an

approved bond certificate; or (3) by posting $75 cash bail ***."  210 Ill. 2d R. 526(a).

Defendant asserts that the officer's failure to issue a citation before the arrest nullified the

search thereafter.  We disagree with this argument for several reasons.

First, whether or not defendant was issued a citation prior to the custodial arrest and search

is of no consequence.  Based on the holding in Moore, the failure to follow Rules 526(a) and 552

does not affect the reasonableness of the arrest and the search incident to the arrest, under the fourth

amendment.  Thompson had authority to arrest and search defendant when he saw defendant commit

the traffic offenses.

Second, Rule 552 provides that a citation can be given within 48 hours after an arrest, if

necessary. 210 Ill. 2d R. 552. However, in this case, it was not necessary to issue the traffic citation because, once Thompson searched defendant incident to the custodial arrest, defendant was arrested for unlawful possession of drug paraphernalia and drugs. See People v. Mathis, 55 Ill. App. 3d 680, 684-85 (1977) (officers justified in arresting defendant for armed robbery following reasonable detention and custodial arrest when defendant, stopped for speeding, failed to produce a valid driver's license or bond card).

Third, we do not find any language in either rule, or a combination thereof, that requires an arresting officer to issue a traffic citation prior to arresting and searching a defendant. Supreme court rules are construed using the same principles that guide our construction of statutes. People v. Campbell, 224 Ill. 2d 80, 84 (2006). Our primary goal is to give effect to the intent of the rules' drafters. Supreme court rules should be construed and applied according to their plain language. Robidoux v. Oliphant, 201 Ill. 2d 324, 332 (2002). If the language of a rule is clear and unambiguous, courts will apply that language as it is written, without resorting to any further aids of construction. Campbell, 224 Ill. 2d at 84. We review the interpretation of supreme court rules, like the construction of statutes, de novo. Campbell, 224 Ill. 2d at 84.

Rule 552 does nothing more than direct the completion and transmission of traffic tickets. Rule 526(a) explains the manner in which a person arrested for a traffic offense shall post bail. The rules do not require that an officer issue a citation prior to arrest, nor do they make the issuance of a citation the only manner of proof of arrest. The rules simply do not create a condition precedent to arrest.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

SCHOSTOK, J., concurs.

JUSTICE HUTCHINSON, dissenting:

Although I agree that defendant's arrest violated neither the United States nor the Illinois Constitution, I believe that defendant's arrest was invalid under Supreme Court Rule 526(a). The Illinois Supreme Court has promulgated rules governing proceedings in traffic cases, including rules regarding the charging and posting of bail for traffic offenses. As the majority notes, these rules provide police officers alternative procedures to placing an offender under custodial arrest and having the offender appear before a court to obtain bail, as required by the Code of Criminal Procedure. See 210 Ill. 2d Rs. 526(a), 552; 166 Ill. 2d R. 553.

Where an offender is unable to secure release from custody on bail, Rule 553(d) provides that a police officer has the discretion to release the offender by giving an individual bond. See 166 Ill. 2d R. 553(d). Additionally, in a note introducing article V, part B of the supreme court rules, the drafting committee indicated that the bail provisions contained in the supreme court rules were not intended to limit a police officer's discretion to issue a notice to appear, in lieu of bond, in appropriate cases as provided for in section 107--12 of the Code of Criminal Procedure (725 ILCS 5/107--12 (West 2004)). See 210 Ill. 2d art. V, pt. B, Note, at ccxxvi.

In the present case, Thompson's testimony at the suppression hearing indicated that he elected to process defendant's arrest according to the provisions of Rule 526(a). The record reflects that, following his stop of defendant, Thompson did not immediately place defendant under custodial arrest; nor did Thompson issue to defendant a notice to appear or an individual bond. Instead, after advising defendant of the reason for the stop, Thompson inquired whether defendant possessed a driver's license or $75 that he could post as bail. Thompson's reference to the bail provisions of Rule 526(a) plainly indicates that Thompson intended to release defendant on bail pursuant to the provisions of this rule in the event that defendant was able to comply. After defendant indicated that

he had neither a driver's license nor $75, Thompson placed defendant under custodial arrest.

In processing defendant's arrest under Rule 526(a), however, Thompson clearly failed to comply with the requirements of that rule. A defendant's obligation to post bail under Rule 526(a) is triggered only upon being arrested for a traffic offense and being "personally served by the arresting officer with a Citation and Complaint." 210 Ill. 2d R. 526(a). During his testimony at the suppression hearing, Thompson admitted that he never prepared or served a citation upon defendant prior to requesting defendant to post bail or placing him under custodial arrest. Lacking service of the predicate citation, defendant's obligation to furnish bail was never triggered under Rule 526(a). Because defendant's obligation to furnish bail was never triggered, his failure to provide bail did not provide a lawful basis to place him under custodial arrest for purposes of the rule. See Robidoux v. Oliphant, 201 Ill. 2d 324, 332 (2002) (holding that the supreme court rules should be construed and applied according to their plain language).

The majority does not dispute that Thompson failed to follow Rule 526(a) when he failed to personally serve a citation at the time of the arrest. However, I believe the majority's response understates the force and effect of the supreme court rules, which have the force of law and must be obeyed and enforced as written. See People v. Houston, 226 Ill. 2d 135, 152 (2007); Harris v. Annunzio, 411 Ill. 124, 126 (1952). Although the supreme court rules generally speak to the obligation of the courts and the parties appearing before them, those rules governing procedures in traffic cases apply equally to the police who are charged with executing them. Indeed, the rules contain numerous provisions requiring police officers to take certain actions in traffic cases. See, e.g., 166 Ill. 2d R. 504 (providing that arresting officer shall set the date for the offender's first court appearance between 14 and 60 days of the arrest); 166 Ill. 2d R. 505 (providing that officer issuing traffic citation shall also issue to the offender the prescribed notice regarding avoiding multiple court

appearances); 210 Ill. 2d R. 552 (requiring arresting officer to complete citation and transmit citation to clerk of the circuit court within 48 hours of arrest). For these reasons, I believe that Rule 526(a) had the force of law and required Thompson to issue defendant a citation before requiring him to post bail.

In my view, the question then becomes whether defendant is entitled to any relief as a result of Thompson's failure to issue a citation. The answer depends on whether the language contained in Rule 526(a) is construed to be directory or mandatory. See People v. Hanna, 185 Ill. App. 3d 404, 408-09 (1989) (construing language of Rule 552). In determining whether the language of a supreme court rule is mandatory or directory, our supreme court has applied the rules applicable to the construction of statutes:

> " 'Ordinarily a statute which specifies the time for the performance of an official duty will be considered directory only where the rights of the parties cannot be injuriously affected by failure to act within the time indicated. However, where such statute contains negative words, denying the exercise of the power after the time named, or where a disregard of its provisions would injuriously affect public interests or private rights, it is not directory but mandatory.' " Village of Park Forest v. Fagan, 64 Ill. 2d 264, 268 (1976), quoting Carrigan v. Liquor Control Comm'n, 19 Ill. 2d 230, 233 (1960).

A defendant is entitled to relief only where a public official has failed to perform an official duty that is mandatory. Hanna, 185 Ill. App. 3d at 409-10.

Applying these principles of construction to Rule 526(a), I believe that the rule specifies the time for the performance of an official duty. Rule 526(a) provides that the arresting officer must personally serve a citation upon the defendant before the defendant's obligation of posting bond arises. See 210 Ill. 2d R. 526(a) ("[A] person arrested for a traffic offense and personally served by

the arresting officer with a Citation and Complaint shall post bail ***"). I find further support for this conclusion in the language of Rule 552, which provides that the arresting officer "shall complete the [citation] form or ticket." 210 Ill. 2d R. 552; see also People v. Woolridge, 292 Ill. App. 3d 788, 791 (1997) (noting that supreme court rules should be construed together in order to give effect to each rule).

I believe that an arresting officer's failure to personally serve a citation on an offender prior to requesting the offender to post bond injuriously affects public and private interests. All defendants have a fundamental constitutional right to be informed of the nature and cause of the charges against them. U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8; People v. Brogan, 352 Ill. App. 3d 477, 488 (2004); People v. Swartwout, 311 Ill. App. 3d 250, 256 (2000). This fundamental right has been codified in section 111--3 of the Code of Criminal Procedure (725 ILCS 5/111--3 (West 2004)). See People v. Meyers, 158 Ill. 2d 46, 51 (1994). Moreover, section 109--1(a) of the Code of Criminal Procedure requires that "[a] person arrested with or without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge *** and a charge shall be filed." 725 ILCS 5/109--1(a) (West 2004). Section 109--1(b)(1) further requires the trial judge to then advise the defendant of the charge against him or her and provide the defendant with a copy of the charge. 725 ILCS 5/109--1(b)(1) (West 2004). At this point, after a written charge has been filed and the defendant has been advised of its contents, the trial judge shall "[a]dmit the defendant to bail in accordance with the provisions of Article 110 of this Code." 725 ILCS 5/109--1(b)(4) (West 2004).

In view of the constitutional and statutory authority requiring a defendant to be provided with the written charges, I believe that an officer's failure to personally serve a traffic citation on an offender as required by Rule 526(a) injuriously affects the offender's private rights and the interest of the greater public. Under the statutory provisions detailed above, a defendant is entitled to receive

the written charges against him before the obligation to post bail arises. I see no reason why a defendant who is arrested and processed pursuant to the traffic provisions contained in article V of the Illinois Supreme Court rules should receive disparate treatment. See People v. Joseph, 113 Ill. 2d 36, 58 (1986) (Simon, J., dissenting) (noting that supreme court rules should be construed in harmony with applicable statutes whenever possible). Where a police officer, rather than the trial court, is responsible for admitting the defendant to bail, fairness requires that the officer write a citation and personally serve it on the defendant prior to requesting the defendant to post bail. Accordingly, I construe that Rule 526(a)'s requirement that the arresting officer personally serve the offender a citation is mandatory rather than directory.

By his own admission, Thompson failed to write or personally serve a traffic citation prior to asking defendant whether he could post bail. Indeed, the record reflects that Thompson never wrote a traffic citation for the offenses for which he stopped defendant and for which he placed defendant under custodial arrest. Due to Thompson's failure to comply with the mandatory language of Rule 526(a), his custodial arrest of defendant was unlawful. Lacking a lawful custodial arrest, Thompson had no lawful basis to search defendant. See People v. Spann, 332 Ill. App. 3d 425, 438 (2002) (noting that evidence obtained during search after unlawful arrest must be suppressed). Accordingly, I believe that the trial court erred in denying defendant's motion to quash his arrest and suppress evidence, and I believe that we should have reversed outright defendant's convictions and sentences.

I respectfully dissent.